IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA H.,[1]

    Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

Civ. No. 3:18-cv-00120-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. This court has jurisdiction under 42 U.S.C. § 405(g).

On January 14, 2011, Plaintiff filed an application for benefits, alleging disability as of January 1, 1995.[2] Tr. 194-98.[3] After a hearing, the administrative law judge (ALJ) determined that Plaintiff was not disabled under the Social Security Act from January 1, 1995 through October 4, 2013. Tr. 21-22. Plaintiff appealed and the District Court remanded the matter for further proceedings. On remand, Plaintiff attended a second hearing before the ALJ on

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] Although Plaintiff seeks benefits as of 1995, her 2009 application for benefits was denied in 2010. Tr. 866. Plaintiff did not appeal that decision.
[3] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

November 10, 2016. The ALJ then issued another opinion finding Plaintiff was not disabled under the Act through January 5, 2017. Tr. 878.

Plaintiff argues the ALJ erred in giving little weight to the opinions of an examining psychologist and a treating mental health therapist. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with

respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, but with the following relevant non-exertional limitations: that she is limited to jobs that involve simple, repetitive tasks, and she is limited to only occasional public contact and can do no work as part of a team. Tr. 870. In formulating Plaintiff's RFC, the ALJ found Plaintiff was less-than fully credible as to the extent of her limitations. Plaintiff does not challenge that finding. Additionally, the ALJ gave little weight to the opinions of examining psychologist Dr. Gary Sachs, Ph.D., and Karen Van Acken, MA, MHQP, Plaintiff's mental health therapist. Plaintiff argues the ALJ erred in discounting the above opinions.

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When a treating physician's opinion is contradicted by another medical opinion, the ALJ may reject the opinion of a treating physician only by providing "specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Generally, a treating doctor's opinion is entitled to more weight than an examining

doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Dr. Sachs examined Plaintiff on July 12, 2013. Tr. 844-851. Dr. Sachs initially noted that he obtained information from Plaintiff "without corroboration, and opinions formed as a result of this consultation should be viewed in that light." Tr. 845.[4] During the examination, Plaintiff maintained good eye contact, but was tearful when recalling childhood sexual abuse. Tr. 845. "She was able to follow the examiner throughout the clinical interview. Insight and judgment appeared somewhat limited. She complained about 'voices' in her head, but on careful questioning, denied hearing disembodied voices." Tr. 845. Plaintiff complained of physical symptoms in times of stress, including suffering from nausea and regurgitation. Tr. 845. Plaintiff complained of blackouts ever since a 2003 accident. Tr. 846. Plaintiff had an anxious affect and her mood appeared dysthymic. She described symptoms of PTSD. Tr. 845.

Dr. Sachs completed a mental medical source statement. Tr. 849-851. As relevant here, Dr. Sachs opined that Plaintiff had slight limitations in understanding and carrying out simple instructions and mild restrictions with the ability to make judgments on simple work-related decisions. Tr. 849. Plaintiff had moderate restrictions on interacting appropriately with the public, supervisors, and co-workers. Tr. 850. Plaintiff had marked restrictions (i.e., serious limitations) in responding appropriately to usual work situations and changes in a routine work setting. Tr. 850.

The ALJ gave limited weight to Dr. Sachs's opinion. Tr. 875. Specifically, the ALJ noted that while Dr. Sachs believed Plaintiff had some marked limitations:

> his assessment does not preclude simple, routine tasks, which do not involve great stress or decision-making. Evidence does not establish an inability to respond

---

[4] As noted, the ALJ provided multiple reasons for finding Plaintiff less-than fully credible as to the extent of her limitations. Tr. 871-76.

4 – OPINION AND ORDER

> appropriately to usual work situations and changes provided she is in a simple, routine work environment. She has repeatedly worked when she needs to. Treatment records reflect her symptoms have improved when working because she likes feeling productive. She describes being good at her summer pool attendant job, indicating that she trains other people. The moderate limitations in interacting [with] the public, coworkers and supervisors have been considered. Evidence supports a finding that the claimant is limited to occasional contact with the public and should do no work as apart of a team. However, I do not find evidence to support additional restrictions in interactions with the public or coworkers or any limitations in supervisor contact. The claimant describes, "I'm nice, friendly, I like people, get along with just about anybody." The record contains no evidence of difficulties with authority figures or accepting instruction from others. She reports she gets along well with authority figures.

Tr. 875 (internal citations omitted).

The above reasoning points to several specific and legitimate reasons, supported by substantial evidence in the record, for giving little weight to Dr. Sachs's opinion as to Plaintiff's ability to work with co-workers and supervisors, and her ability to respond to changes in a routine work setting. When weighing a medical opinion, the ALJ must consider that opinion in relation to the record as a whole. 20 C.F.R. § 404.1527(c)(4). Here, the ALJ contrasted Dr. Sachs's opinion with Plaintiff's employment history. Notably, the record supports the ALJ's finding that Plaintiff was able to work successfully when she wanted to.[5] Plaintiff worked four summers in a row as a pool attendant. Although she wanted to work a fifth summer, "they had switched management and I didn't get hired back." Tr. 40. In therapy sessions, Plaintiff described her work at the pool: "I think I am good at it and I train other people too which means that my boss thinks I'm good at the job too." Tr. 608.

Although Plaintiff later reported some communication issues with her boss that caused her anxiety, Tr. 615, the record supports the ALJ's determination that Plaintiff's four summers of successful work supported a RFC limiting Plaintiff to jobs involving simple and repetitive tasks

---

[5] In late 2012, Plaintiff was excited about the prospect of a caretaker job in Coos Bay. Tr. 823. Plaintiff turned down the job not due to her impairments, but because her dogs and boyfriend could not go to Coos Bay and she did not want to leave them behind in Portland. Tr. 819 ("I decided to stay in Portland if they can't come with me.").

5 – OPINION AND ORDER

with only occasional public contact and no work as part of a team. Tr. 870. In fact, in a function report, Plaintiff stated she gets along "good" with authority figures such as bosses and that she had never been fired or laid off from a job due to problems getting along with other people. Tr. 301. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that the record supports restrictions on contact with a supervisor and that Plaintiff is unable to respond appropriately to changes in a work setting—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

Plaintiff also argues the ALJ erred in giving little weight to her treating counselor, Karen Van Acken, MA QMHP. The parties agree that Ms. Van Acken qualifies as an "other source." The ALJ may reject "other source" opinions if the ALJ provides germane reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Additionally, an ALJ may discount other source opinion when the opinion is inconsistent with medical evidence in the record and inconsistent with other evidence of the claimant's functioning. *Jamerson v. Chater*, 112 F.3d 1064, 1066–67 (9th. Cir. 1997).

On May 31, 2013, Ms. Van Acken filled out a mental health functional report. Tr. 742-45. Ms. Van Acker noted she treated Plaintiff for one month in weekly therapy sessions. Tr. 742. She diagnosed Plaintiff with PTSD, a dysthymic disorder, and a rule out dissociative identity disorder. Tr. 742. Ms. Van Acken believed Plaintiff dissociates and experiences depressive symptoms and struggles with even limited social interactions. Tr. 743. As relevant here, Ms. Van Acken opined that Plaintiff was markedly limited in her ability to perform activities within a

schedule, maintain regular attendance, interact appropriately with the public, accept instructions or criticism from supervisors, and get along with coworkers. In Ms. Van Acken's view, Plaintiff was able to focus for a maximum of ten minutes. Tr. 744.

As noted, the ALJ gave Ms. Van Acken's opinion little weight. Tr. 873. The ALJ stated:

> She had only been treating the claimant for a month at the time she completed this questionnaire. No clear basis is provided for the described limitations, other than the claimant's self-report of symptoms, which are not fully consistent with the treatment record. Ms. Van Acken reports the claimant cannot sustain focus for more than 10 minutes, but treatment records reflect she was able to sustain focus on an art project without pause for nearly an hour.

Tr. 873.

The above are germane reasons for rejecting Ms. Van Acken's opinions. Ms. Van Acken stated, without qualification, that "she has a 10 min maximum of focus." Tr. 744. As pointed out by the ALJ, this opinion contrasted with evidence that Plaintiff maintained focus for an entire hour during art therapy sessions. And as noted by the ALJ, Plaintiff focused well enough to perform adequately on a mental status exam administered by Dr. Sachs. Tr. 875; Tr. 845 ("She was able to follow the examiner throughout the clinical interview.").

More importantly, the ALJ noted Ms. Van Acken based her opinions on Plaintiff's self-reporting of symptoms, and those self-reports were not credible. This finding is supported by the record. Two months before Ms. Van Acken provided her opinion, and one month before Ms. Van Acken began counseling Plaintiff, Dr. Norvin Cooley, Ph.D performed a psychological evaluation of Plaintiff. Tr. 750-61. That evaluation was necessary as Plaintiff had recently been arrested for theft, claimed to have blacked out during the theft, and her attorney needed a psychological evaluation to determine whether Plaintiff (1) could aid in her own defense and (2)

7 – OPINION AND ORDER

whether Plaintiff had the requisite culpable mental state during the incident. Tr. 751.[6] Dr. Cooley noted that although Plaintiff stated she did not remember stealing anything, "There were also indications that she endorsed items to present an unfavorable impression or to represent particularly bizarre and unlikely symptoms. Her results raise the possibility of an element of exaggeration of complaints and problems." Tr. 758. Plaintiff took the Miller Forensic Assessment of Symptoms Test which is a test of symptom exaggeration or malingering. Tr. 759. Dr. Cooley noted that her "total score indicates the potential of malingered symptoms. Her pattern of scores indicates that she endorses extreme symptoms, rare symptom combinations, unusual hallucinations, an unusual symptom course, and a negative self-image." Tr. 760. "Personality inventory was of questionable validity due to inconsistent responses." Tr. 761.

The ALJ noted Dr. Cooley's notes of symptom exaggeration and commented on the "secondary gain factors" involved around Plaintiff's symptoms during this time period. Tr. 873. Plaintiff noted that she faced 18 months in prison for the theft, which would be her 13th conviction for theft. Ultimately, Plaintiff avoided a prison sentence as her conviction was "mental health suspended." Tr. 903. The record supports the ALJ's determination that Plaintiff complained of a worsening of her mental health symptoms following her arrest for theft. As Ms. Van Acker based her opinion on Plaintiff's self-reports during that time period, the ALJ did not err in giving little weight to Ms. Van Acker's opinion.

/ / / /

/ / / /

/ / / /

/ / / /

---

[6] Although Plaintiff claimed to have blacked out during the theft, Plaintiff described hearing about a similar scheme from a friend, where one returned stolen goods to a store for money. Tr. 832. As described by Plaintiff, "She said it has worked numerous times for her so I decided to try it." Tr. 832.

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 30th day of August 2019.

 s/Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge